**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN MOSES,<br><br>     Plaintiff,<br><br>   v.<br><br>AMAZON.COM.DEDC LLC,<br><br>     Defendant. | Civil Action No. 16-8675 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

### SHIPP, District Judge

  This matter comes before the Court upon Defendant Amazon.com.dedc LLC's ("Amazon") Motion for Summary Judgment. (ECF No. 87.) Pro se Plaintiff John Moses ("Plaintiff") opposed (ECF No. 92) and Amazon replied (ECF No. 96). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1 For the reasons set forth below, Amazon's Motion for Summary Judgment is granted. As a result, this Court dismisses all federal claims against Defendant and declines to exercise supplemental jurisdiction over Plaintiff's claims brought under New Jersey Law Against Discrimination ("NJLAD"). Plaintiff may reassert the NJLAD claims in state court. Pursuant to 28 U.S.C. § 1367(d), the period of limitations shall be tolled for the time Plaintiff's NJLAD claims were pending with this Court and a period of 30 days after Plaintiff's NJLAD claims are dismissed unless State law provides for a longer tolling period.

## I. BACKGROUND

Plaintiff initially began working at Amazon's fulfillment center in Robbinsville, New Jersey (the "Fulfillment Center"), on November 6, 2016, as an employee of a third-party, Integrity Staffing Solutions. (Def.'s Statement of Undisputed Material Facts ("DSUMF")[1] ¶ 2, ECF No. 87-2.) Amazon then hired Plaintiff as a full-time fulfillment associate on January 18, 2016. (*Id.* ¶ 3.) Plaintiff was employed with Amazon for six weeks and worked nineteen shifts before his employment was terminated on March 1, 2016. (*Id.* ¶¶ 1, 50.) Plaintiff's work as a fulfillment associate involved "receiving products using radio frequency scanners, relocating products throughout the Fulfillment Center, using forklifts and pallet jacks, picking customer orders, and packing and shipping customer orders." (*Id.* ¶ 4.)

### A. Plaintiff's EEOC Charge Regarding the Final Written Warning

On January 28, 2016, Plaintiff was not scheduled to work, and he went to the Fulfillment Center to provide proof of identification for his I-9 employment form. (*Id.* ¶ 8; *see* Moses Dep. Tr. 63:10-16, Ex. 73 to Pl.'s Opp'n Br., ECF Nos. 92-10, 92-11.) On that date, Plaintiff attempted to enter the Fulfillment Center with a cell phone that he had not registered with security. (DSUMF ¶ 9.) A security officer asked Plaintiff to complete an unregistered asset form for his cell phone,

---

[1] Plaintiff failed to submit a responsive statement of material facts as required by Local Civil Rule 56.1(a), and therefore has technically admitted to all the facts in the DSUMF. The Court, however, has gone through the exercise of identifying and addressing any material facts in dispute as necessary. The Court also notes that in various instances in his opposition brief, Plaintiff appears to have copied language directly from Defendant's brief and, as a result, on the face of his papers argues at certain points *for* a finding of summary judgment. (*See, e.g.*, Pl.'s Opp'n Br. 44, ECF No. 92 ("Plaintiff also cannot establish a retaliation claim under the [New Jersey Law Against Discrimination] because, in addition to lacking evidence of pretext, he cannot show a causal connection between his EEOC Charge and any adverse employment action."); *id.* at 47 ("In other words Plaintiff always had the accommodation he said he needed to do his job.").) The Court understands these instances to be mere typographical errors and does not consider Plaintiff to be contradicting his substantive arguments made elsewhere in opposition to Amazon's Motion.

as required by Amazon policies. (*Id.* ¶¶ 5-7, 10.) According to Plaintiff, he "got into an altercation with the security guard regarding [his] phone, something that [the security guard] had not given whites a difficult time about." (EEOC Charge, Ex. L to Desmedt Decl., ECF No. 87-4.) A summary of this altercation provided by an Amazon security officer indicates that Plaintiff cursed at the officer and refused to fill out the form, accused the officer of "treating him like a child," and told the officer that he "better watch [his] [expletive] mouth!" (Vidal E-mail, Ex. I to Desmedt Decl., ECF No. 87-4.) Plaintiff denies cursing at the officer. (*See* EEOC Charge.) Ultimately, Plaintiff filled out the required form and entered the building. (DSUMF ¶ 12.) Amazon area manager Taylor Mele and a human resources officer met with Plaintiff on January 31, 2016, to discuss the security incident. (*Id.* ¶ 17.) Plaintiff stated that the security officer "got smart with [him]" and he told the security officer he was "a human being." (*Id.* ¶ 18 (citing Pl. Witness Statement, Ex. H to Desmedt Decl.)

On February 6, 2016, Amazon area manager Scott Taylor issued Plaintiff a Final Written Warning for violating Amazon's Standards of Conduct by using "inappropriate language and profanity" and "continu[ing] to be argumentative and uncooperative with security" during the January 28, 2016 incident. (DSUMF ¶ 20; *see* Final Written Warning, Ex. K to Desmedt Decl.)

After receiving the Final Written Warning, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 11, 2016. (EEOC Charge.) The EEOC Charge alleges that Plaintiff was discriminated against based on race. (*Id.*) In the EEOC Charge narrative, Plaintiff avers:

> I began working for the above employer on January 18, 2016. I was asked to bring in my second form of ID in order to complete my forms. I did so on my day off on January 28, 2016. At this time[,] I got into an altercation with the security guard regarding my phone, something that he had not given whites a difficult time about. He stated that I cursed at him, which I deny doing. However, I was given a final written warning. White employees have been caught stealing, cursing and other

3

such offenses without being subjected to the same level of discipline. Given the above, I believe I have been discriminated against due to my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*) In the EEOC Intake Questionnaire, Plaintiff wrote that the basis for his employment discrimination claim was, "[b]ecause a white person lied on me and the[y] w[ere] quick to make a decision as to what happen[ed], just because he was white." (EEOC Intake Questionnaire 2, Ex. M to Desmedt Decl.) Plaintiff also wrote that this was discriminatory "[b]ecause it is a lie. Also because I have seen other white associate[s] in the build[ing] . . . and on other days with their phone[s]." (*Id.*) Plaintiff also alleged that he has "seen white security guards kick a door open and curse, while the door hit standby [associate]." (*Id.*) In handwritten notes attached to the EEOC Intake Questionnaire, an EEOC officer wrote:

> 1/28 walked into bldg[.] to bring in 2nd form of ID for W2 & [I-9], ask security where HR is, on his phone, security gave him a hard time for being on his phone/having his phone; got into it w/ security → suspended his badge for not giving [I-9] form→ Monday tell him issue w/his phone, cursed at security etc., he just told them not to talk to him like that → got final written for that → has seen whites steal, curse & kick security door, etc. w/out being put on final warning.

(*Id.* at *150.)[2] Plaintiff testified that he shared with the EEOC intake officer additional facts regarding multiple racist statements directed at him by Amazon supervisors and Amazon's racially disparate treatment of him with regards to his need to wear prescription tinted glasses, but these were not reflected in the EEOC Charge. (*See, e.g.*, Moses Dep. Tr. 88:14-21.) Plaintiff did not update or amend his EEOC Charge or file any other EEOC complaints regarding his employment with or termination by Amazon. (DSUMF ¶ 26; *see* Moses Dep. Tr. 89:1-5.) The EEOC sent a copy of the EEOC Charge to Amazon's counsel on February 25, 2016. (DSUMF ¶ 27.) Plaintiff also testified that he told many people about his EEOC claims and that the Amazon employees who ultimately terminated him knew of his complaint. (*See* Moses Dep. Tr. 95:3-14.)

---

[2] Page numbers preceded by an asterisk refer to the page number of the ECF header.

Amazon submitted a position statement to the EEOC in response to Plaintiff's EEOC Charge (DSUMF ¶ 56), and the EEOC issued Plaintiff a right to sue letter on August 17, 2016. (EEOC Dismissal and Notice of Rights Letter, Ex. A to Compl., ECF No. 1-1.) Plaintiff filed this lawsuit on November 21, 2016. (ECF No. 1.)

## B.   Plaintiff's Prescription Glasses

When Plaintiff began working at Amazon through the third-party staffing company, he informed Amazon that he needed to wear dark glasses due to an eye injury he suffered in 2012. (Moses Dep. Tr. 43:3-10, 102:24-103:6.) Plaintiff was taken to Human Resources regarding this request, and he was told that Amazon would order him the glasses he needed. (*Id.* at 101:17-102:1, 105:24-106:3, 113:10-24.) Olivia Butler, who worked as an Amazon leave of absence and accommodations officer, asked Plaintiff to provide medical documentation reflecting his need for dark glasses. (DSUMF ¶ 33; Moses Dep. Tr. 116:10-118:21; Accommodation Correspondence,[3] Ex. N to Desmedt Decl.) Plaintiff provided medical documentation from 2012. (Moses Dep. Tr. 44:3-20, 116:10-118:21.) When Plaintiff was told he needed to provide updated documentation, he told Amazon "that was discrimination." (*Id.* at 119:1-13.)[4] Plaintiff testified that he "felt as though that [he] was being ill-treated because everybody else gets to wear their glasses and they get to wear their personal protective eye wear." (*Id.* at 138:3-6.) Although it appears from the record that this accommodation issue was never resolved between Amazon and Plaintiff prior to

---

[3] Plaintiff refutes that Amazon provided him with this accommodation correspondence. (Pl.'s Opp'n Br. 7.) As Plaintiff testified that he had these conversations in person with Amazon area managers and HR representatives, the Court notes that for purposes of deciding this motion, whether Plaintiff received the accommodation request letter is immaterial.

[4] Plaintiff contradicts this sworn testimony in his brief, arguing that he "did not refuse to submit up-to-date optical/medical documentation support [for] his request for special glasses, in fact Plaintiff was not given directive to submit an up-to-date medical on November 6, 2015 nor February 6, 2016." (Pl.'s Opp'n Br. 47.)

his termination, Plaintiff wore his own dark glasses throughout the duration of his employment with Amazon. (*Id.* at 114:10-23.)

## C. Amazon Supervisors' Racist Comments and Disparate Treatment

Plaintiff testified that several Amazon supervisors and human resources officers made racist comments directed at him. Regarding the security incident, he heard human resources officers saying "his black ass probably lying." (*Id.* at 82:4-5.) He testified they walked out of the room and he could still hear them speaking and laughing. (*Id.* at 82:1-5.) Plaintiff also testified that he heard someone saying "the [N word] probably did it, his black ass probably did it." (*Id.* at 91:19-20.) Furthermore, Plaintiff testified that during the meeting he had regarding the January 28, 2016 phone incident, there were "a bunch of" people in the room and that he heard them using a racial epithet against him. (*Id.* at 92:13-16.) Plaintiff also testified that "that's what they do at Amazon. They talk about you behind your back and they think you don't hear them." (*Id.* at 92:17-19.) He also testified that he heard someone saying that he was "aggressive" and "angry." (*Id.* at 93:11.) Plaintiff also testified that he was called a "pig" during that interview. (*Id.* at 186:15-18.)

Plaintiff testified that during a November 6, 2015 conversation regarding his eye injury and the need for prescription glasses with area manager Bill (*id.* at 111:4), and Chris, who works in the learning lab (*id.* at 111:6), "Chris got mad and he was like you just want to let him just get away with it, and then while [Bill and Chris were] talking Chris was like, you know what I mean, you people don't listen" (*id.* at 106:5-9). Plaintiff testified that when he asked Chris what that statement meant, Chris responded that "black people don't listen." (*Id.* at 106:10-13.)

Plaintiff testified that on another occasion, Bill called him a "hard head, a hard black head ass or something like that." (*Id.* at 151:17-18.) Bill proceeded to "shout[] in [Plaintiff's] face and he started shouting words in [his] face and [Plaintiff] told him don't talk to me like that." (*Id.* at

6

152:3-5.) Plaintiff testified Bill made "comments about [his] race and about [Plaintiff] being slow." (*Id.* at 152:14-15.) Plaintiff also testified that he heard a manager telling a white associate that Plaintiff was "too thuggish and she said she didn't like my black attitude." (*Id.* at 183:8-12, 185:4-6.) Plaintiff further testified that white associates would get "preferences of what machines they went to" and those machines "would be a lot faster" (*id.* at 165:20-21, 171:14), and that Amazon managers would allow white associates to steal products from their workstations (*id.* at 177:22-179:14). Plaintiff testified that he did not tell anyone at Amazon about the racist comments that were directed at him because he would have had to tell "the people that's setting [him] up," "the same people that did injustice to [him] is the same people [he is] supposed to go to get justice from?" (*Id.* at 93:1-2, 20-22.) Plaintiff also testified that several people witnessed these comments. (*Id.* at 150:16-17.)

### D. Plaintiff's Termination for "Time Off Task"

Amazon monitors the performance of fulfillment associates using standardized metrics for quality and productivity. (DSUMF ¶ 40; *see* Quality and Productivity Performance Management Policy, Ex. O to Desmedt Decl.) One such metric, known as "Time Off Task," is calculated by tracking every time a Fulfillment Associate uses the electronic scanner device to scan a product. (DSUMF ¶ 42.) When six or more minutes of inactivity passes between two consecutive scans, a [f]ulfillment [a]ssociate is considered "off task." (*Id.* ¶ 43.) Managers are required to review for termination any fulfillment associate who is off task for more than two hours in a single shift. (*Id.* ¶ 45; *see* Time Off Task Guidelines, Ex. Q to Desmedt Decl.)

On February 28, 2016, Amazon's computer system generated a report showing Plaintiff had been "off-task" or inactive for 205 minutes of his ten-hour shift. (DSUMF ¶ 47; *see* Moses Time Details 2/28/16, Ex. R to Desmedt Decl.) Amazon area manager Keith Tanis and Human

7

Resources Business Partner Amanda Hummel met with Plaintiff on March 1, 2016, in a "seek to understand" meeting regarding his 205 minutes of time off task. (DSUMF ¶ 48.) Plaintiff told Tanis, "I wasn't time off task and he could clearly see that I wasn't time off-task because when he came he seen me touching the computer and hitting the skip button because it kept sending me the same pods, so he seen me working." (Moses Dep. Tr. 131:9-14.) Plaintiff testified that he had to "hit the skip button instead of using the scanner" because a "looper pod . . . kept sending [him] the same thing." (*Id.* at 131:23-132:10.) Plaintiff did not, however, provide this or any other explanation during his "seek to understand" meeting with Tannis and Hummel. (*Id.* at 134:15-18; DSUMF ¶ 49.) Because Plaintiff was off task for more than three hours during this shift without explanation, Plaintiff was terminated effective March 1, 2016. (DSUMF ¶ 50; *see* Supportive Feedback Document Behavioral – Termination, Ex. S to Desmedt Decl.)

### E. Present Action

Plaintiff filed this lawsuit on November 21, 2016 (ECF No. 1), and filed an Amended Complaint on November 28, 2016 (First Am. Compl., ECF No. 4 ("FAC")). Plaintiff brings claims for violations of Title VII and New Jersey Law Against Discrimination ("NJLAD") for racial discrimination, hostile work environment, disability discrimination and failure to accommodate, and retaliation. Amazon now moves for summary judgment on all of Plaintiff's claims. (ECF No. 87.)

On December 30, 2019, the Court dismissed all counts against the individual defendants for insufficient process and insufficient service of process and instructed Plaintiff that he may move for an extension to effect service by January 31, 2020. (ECF No. 82.) Plaintiff failed to do so. Plaintiff now argues for more time "because [of] the Covid19 situation we are in." (Pl.'s Opp'n Br. 8.) Plaintiff did not ask the Court for an extension prior to his deadline, or at any time before

8

filing his opposition to the present motion. Moreover, the Court does not find good cause shown for Plaintiff's failure to move for an extension by January 31, 2020, because of COVID-19, which was not a public health emergency until March 9, 2020.[5]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law identifies what facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (citation omitted).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter," but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. The Court also will not "resolve factual disputes or make credibility determinations." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)). Although the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for

---

[5] *See Gov. Murphy Declares State of Emergency, Public Health Emergency to Strengthen State Preparedness to Contain the Spread of COVID-19*, nj.gov (Mar. 9, 2020), https://www.nj.gov/governor/news/news/562020/20200309b.shtml.

9

trial." *Anderson*, 477 U.S. at 250. The Court must grant summary judgment if the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

## III. DISCUSSION

### A. Failure to Timely File the Title VII Claims

"A complainant may not bring a Title VII suit without having first received a right-to-sue letter" and suit must be filed within ninety days of receipt of the letter. *See Burgh v. Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). This 90–day period begins "when . . . the claimant . . . receives a right-to-sue letter[.]" *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 n.1 (3d Cir. 1999). "When the actual date of receipt is known [and undisputed], that date controls." *Id.* at 239. Otherwise, "courts will presume that a plaintiff received [his] right-to-sue letter three days after [it was mailed]." *Id.* (citation omitted). This filing requirement is not jurisdictional, however, and is instead likened to a statute of limitations. *Id.* at 239–40. Accordingly, the ninety-day filing requirement is subject to equitable tolling principles. *Id.* Nevertheless, "[w]hile the 90–day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (citations omitted); *see also Burgh*, 251 F.3d at 470.

As described above, Plaintiff filed only one EEOC Charge related to this action, regarding the Final Written Warning he received from Amazon. (*See* EEOC Charge.) The EEOC issued

10

Plaintiff a Dismissal and Notice of Rights letter dated August 17, 2016. (Dismissal and Notice of Rights Letter, Ex. A to Compl.) This letter informed Plaintiff that he "may file a lawsuit against the respondent(s) under federal law based on this charge" and that such lawsuit "**must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost." (*Id.*) Plaintiff filed his complaint on November 21, 2016, 96 days later. (*See* ECF No. 1.) Amazon argues that Plaintiff's Title VII claims are therefore time-barred and must be dismissed with prejudice. (Def.'s Moving Br. 9, ECF No. 87-1.)[6]

Plaintiff claims he "received his Right to Sue letter on August [] 23, 2016, so that is the date his 90-day deadline starts to run." (Pl.'s Opp'n Br. 6, ECF No. 92.) Later, Plaintiff claims he received the letter on August 24, 2016. (*Id.* at 25.) Plaintiff is not only inconsistent on this point, but he also fails to provide evidence rebutting the three-day presumption. The Court, accordingly, finds there is no genuine dispute regarding when Plaintiff received the EEOC letter. Moreover, Plaintiff fails to demonstrate the applicability of an equitable tolling principle. At the latest, then, Plaintiff's 90-day clock began to run on August 20, 2016. Plaintiff's Complaint, filed 93 days later, is therefore not timely.

The Court, therefore, dismisses all of Plaintiff's Title VII claims for racial discrimination, retaliation, hostile work environment, and disability discrimination. The Court notes that Plaintiff only filed one claim with the EEOC, relating to the January 28, 2016 incident and the Final Written Warning he received. In their summary judgment briefing, the parties dispute whether Plaintiff properly exhausted all of his federal claims through the filing of his one EEOC Charge, which

---

[6] Amazon affirmatively raised this in its Answer. (Answer ¶ 13, ECF No. 9 ("Defendant further avers that Plaintiff failed to timely file suit after his admitted receipt of the [EEOC Notice].").) Amazon then moved to dismiss, in part, on this basis. (*See* Def.'s Br. in Support of Mot. to Dismiss 15, ECF No. 75-1.) The Court did not previously address this argument but noted that it did not deem Amazon's defenses waived. (*See generally* Mem. Op., ECF No. 81; *id.* at 6-7.)

11

related to this one discrete incident. The Court, however, does not address whether or not each of Plaintiff's Title VII claims were properly exhausted, because Plaintiff's failure to timely file this action would result in the dismissal of all of his Title VII claims in any case.

## B. The Court Declines to Exercise Supplemental Jurisdiction as to the Remaining NJLAD Claims.

Because the Court dismisses Plaintiff's Title VII claims, the Court declines supplemental jurisdiction over Plaintiff's remaining NJLAD claims. *See* 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court dismissed all claims over which it has original jurisdiction"); *see also Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) ("[b]ecause the Court dismisse[s] all claims over which it ha[s] original jurisdiction, it ha[s] the authority to decline to exercise supplemental jurisdiction" over the remaining state-law claims); *see also Martz v. Camden Cnty. Bd. of Chosen Freeholders*, No. 17-01336, 2019 WL 7343489, at *10-11 (D.N.J. Dec. 31, 2019) (declining to exercise supplemental jurisdiction over NJLAD claims "[e]ven though discovery in this case has concluded and the dispositive motion deadline has passed" because "the action is still currently 'before trial.'") (citation omitted).

Consequently, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims under NJLAD, including Counts 4 and 5 for racial discrimination, hostile work environment, and retaliation, and over any state law claims for disability discrimination and failure to accommodate, to the extent Plaintiff intended to bring such claims.

Pursuant to 28 U.S.C. § 1367(d), the period of limitations for the NJLAD claims shall be tolled while they were pending in this Court and for a period of 30 days from the date of this

12

Opinion and accompanying Order unless State law provides for a longer tolling period. Plaintiff may, if he chooses, pursue his NJLAD claims in state court.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted as to Plaintiff's federal claims. The Court, therefore, dismisses all of Plaintiff's Title VII claims: racial discrimination, retaliation, hostile work environment, and disability discrimination. Plaintiff's state law claims brought pursuant to the New Jersey Law Against Discrimination are dismissed without prejudice and may be reasserted in state court. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**